```
                                                          USDC SDNY
                                                          DOCUMENT
                                                          ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                              DOC #: _____
SOUTHERN DISTRICT OF NEW YORK                             DATE FILED: 9/17/24
------------------------------------------------------------- X
                                                          :
   UNITED STATES,                                         :
                                                          :
                                                          :
                                                          :
                     -v-                                  :
                                                          :    1:22-cr-522-GHW-5
                                                          :
                                                          :
   ALVIN EUSEBIO,                                         :    MEMORANDUM
                                                          :    OPINION & ORDER
                                      Defendant.          :
                                                          :
------------------------------------------------------------- X
```

GREGORY H. WOODS, United States District Judge:

Alvin Eusebio is charged with conspiracy to traffic narcotics and possession and discharge of a firearm. On May 22, 2020, Mr. Eusebio was arrested by officers from the New York Police Department. Mr. Eusebio was carrying illegal narcotics and over $2,000 in cash at the time of his arrest. Mr. Eusebio has moved to suppress that evidence, contending that he was arrested without probable cause. Because the arresting officer saw Mr. Eusebio with dice and exchanging money with a group of others on a public sidewalk, there was probable cause to arrest Mr. Eusebio for loitering for the purpose of gambling. Therefore, Mr. Eusebio's motion to suppress is DENIED.

I.   **PROCEDURAL HISTORY**

On January 25, 2023, Alvin Eusebio was charged in a two-count indictment with participation in a conspiracy to distribute illegal narcotics and possession of a firearm in furtherance of the alleged drug trafficking conspiracy. Dkt. No. 22 (S1 1:22-cr-522 Superseding Indictment). As the case progressed toward trial, the Government filed a sixth superseding indictment. Dkt. No. 393 (S6 1:22-cr-522 Superseding Indictment or the "Superseding Indictment"). The Superseding Indictment charges that Mr. Eusebio participated in a long-running conspiracy to distribute illegal

narcotics in violation of 21 U.S.C. § 846. The Superseding Indictment also charges that Mr. Eusebio possessed a firearm in furtherance of that conspiracy, and that he brandished and discharged a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), and (iii) and 2.

On July 12, 2024, Mr. Eusebio filed a motion to suppress. Dkt. Nos. 387 (notice of motion), 390 (memorandum of law or "D. Mem."). The motion asked the Court to suppress illegal narcotics that had been found on his person on May 22, 2020 after he was arrested by officers from the New York Police Department (the "NYPD"), and also to suppress statements made by Mr. Eusebio following his arrest. Mr. Eusebio's motion was predicated on an argument that the officers who arrested him lacked probable cause to do. In particular, he contended that the officers did not have sufficient information to believe that Mr. Eusebio had been promoting gambling at the time of his arrest. D. Mem. at 11.

Mr. Eusebio submitted a sworn declaration to the Court in support of his motion. Dkt. No. 388 (the "Eusebio Declaration"). In his declaration, Mr. Eusebio acknowledged that a group of people were playing dice outside of his apartment building on May 22, 2020. *Id.* ¶ 3. Police officers began driving down the street toward his building. *Id.* ¶ 4. Mr. Eusebio recounted the events that followed as follows:

> I was not playing dice when the police turned the corner. I was not touching the dice, nor did I have any money in my hand. Indeed, I did not have anything in my hands when the officers arrived. I was observing the game as a spectator and was not participating.
>
> At the time that the police turned the corner, most of the people who had been playing dice began to run in the opposite direction. They grabbed the dice and the money that they had been playing with. Because I did not think I was doing anything wrong, I did not run away.

*Id.* ¶¶ 6–7.

The United States filed its opposition to the defendant's motion to suppress on August 2, 2024. Dkt. No. 416 ("Opposition"). In support of its opposition, the Government presented

2

evidence showing that the officers involved in the arrest had seen Mr. Eusebio gambling, including grand jury testimony of one of the officers, and the sworn criminal complaint filed by one of the officers shortly after the arrest. Dkt. Nos. 416-1, 416-2. Notwithstanding the fact that Mr. Eusebio's account of events conflicted with the Government's account of events, the Government took the position in its opposition that the Court should resolve the motion without an evidentiary hearing.[1] The defendant filed his reply brief on August 16, 2024. Dkt. No. 431.

The Court scheduled an evidentiary hearing by order on August 19, 2024. The Court held that evidentiary hearing on September 6, 2024. During the evidentiary hearing, the Court heard testimony from two of the officers who were involved in the arrest: Detective Vianny Madera and Lt. Commander Gabriel Zambrano. The Court also received physical and documentary evidence offered by the parties, including video taken from officers' body worn cameras on the date of the arrest—both at the time of arrest, and in the police precinct after the defendant's arrest. The defendant offered the Eusebio Declaration into evidence, which the Court accepted without objection by the Government. Mr. Eusebio did not testify.

---

[1] The Government argued that the Court should apply an approach to the resolution of the motion that is fairly analogized to the procedural method used by the Court to evaluate a summary judgment motion in a civil action pursuant to Federal Rule of Civil Procedure 56. The Government argued that, rather than resolving the factual dispute through an evidentiary hearing, the Court should use the facts presented in the "defendant's declaration, combined with the undisputed evidence" to evaluate whether that assemblage of facts would permit a finding of probable cause. Opposition at 7. The Government's proposal that the Court resolve the motion based on the "undisputed" evidence presented to the Court by the Government raises profound issues: it presumes that the Court must accept as true all facts presented to it by the Government unless the defendant has sufficient information to controvert the Government's evidence. The adoption of such a practice would place the burden on the defendant to disprove the Government's account of events, rather than on the Government to prove it. The Government cited no legal authority supporting its position that the Court can resolve a motion to suppress that raises disputed issues of fact using that approach. Lacking citation to clear legal precedent supporting the Government's proposed approach, the Court views it as an invitation to error that is best declined.

II.     **FACTUAL FINDINGS**

    A.     **Findings of Fact**

On May 22, 2020, a group of NYPD officers from the 33rd Precinct's anti-crime unit was on patrol in unmarked police vehicles in Washington Heights. Five NYPD officers were assigned to the unit: then-Officer Madera and three other officers, led by then-Lt. Zambrano. Both Officer Madera and Lt. Zambrano were experienced. At that time, Officer Madera had been a member of the police force for approximately twelve years. He had been a member of the 33rd Precinct's anti-crime unit for several years. Lt. Zambrano had worked for the NYPD for approximately 12 years. Before his appointment to lead the 33rd Precinct's anti-crime unit, he had worked as a detective, squad sergeant and police officer in the Bronx.

In the period leading up to the defendant's arrest, the 33rd Precinct had been "having issues" in the area between 168th Street and 178th Street on Audubon Avenue: the issues included territorial incidents resulting from drug sales in the area, shootings, slashings, and robberies. The block on 174th Street between Amsterdam Avenue and Audubon Avenue was an area of particular focus for the unit because of drug activity and shots fired in the area.

On May 20, 2020, the anti-crime unit was patrolling West 174th Street. Officer Madera was riding in an unmarked police car. The car drove past a building on West 174th Street. Officer Madera saw a group of 8 to 10 people playing dice on the sidewalk in front of the building. Officer Madera saw players in the group exchanging money. The defendant was one of the players. Officer Madera saw Mr. Eusebio holding money and throwing dice.

After the officers observed the dice game, they drove around the area. The officers then drove back to the building, intent on taking "police action"—namely arresting or providing summons to the people who were participating in the game. Some of the participants in the game fled. Mr. Eusebio did not. He was placed under arrest and was handcuffed. After Mr. Eusebio was

handcuffed, Lt. Zambrano searched Mr. Eusebio and found a plastic bag containing illegal narcotics. On the sidewalk near where Mr. Eusebio was arrested, officers found three plastic dice.

Following his arrest, Mr. Eusebio was taken to the 33rd Precinct. Before he was placed in a holding cell, he was searched again, and officers found that he had over $2,000 in cash on his person.

On May 23, 2020—the day after the arrest—Officer Madera swore out a criminal complaint. That complaint stated that Mr. Eusebio and Alex Montilla, who had been arrested with him, had been charged with five crimes. Three of the charges related to the defendants' possession of a controlled substance—the narcotics found following the arrest. Two of the charges related to the gambling activity that Officer Madera had observed: violations of PL 225.05, "Promotion of Gambling in the Second Degree," and PL 240.35(2), "Loitering."

In the complaint, which was prepared in collaboration with the assigned assistant district attorney, Officer Madera wrote the following about his observations that led to the arrest:

> I observed the defendants at the above described location throwing dice on the ground with unapprehended individuals. I observed the defendants holding sums of United States currency and exchanging currency with each other and with the unapprehended individuals. I recovered three dice on the ground in front of the defendants.
>
> I know, based on my training and experience as a police officer, that dice are used in games of chance and used for the purpose of gambling. I know . . . that the defendants' actions are indicative of their participation in a game of "dice", which is a game of chance where players bet money that may be won or lost depending on the outcome of dice rolls.

Dkt. No. 416-1.

### B.   Credibility of Witnesses and the Eusebio Declaration

In reaching these findings of fact, the Court has evaluated all of the evidence presented to it during the evidentiary hearing. The Court found the testimony of the two officers to be fully credible. While the Government was unable to produce video showing the dice players, the video

5

recordings of the officer's interactions with Mr. Eusebio strongly support their account of events. Significantly, in the immediate aftermath of the arrest, one officer is heard explaining that "you all playing dice and drinking liquor . . . ." Mr. Eusebio is later heard asking "why you all searching me in the first place, though?" The answer: "You all been drinking liquor and you were playing dice in front of the building." Mr. Eusebio responded that he had not been drinking, and that it was his building—not that he was not playing dice.

After the passage of four years, and many arrests, the officers testified credibly that they did not have a specific recollection of the activities of the defendant himself on the date of the arrest. But Officer Madera swore out a complaint just one day after the arrest asserting that he had seen the defendant "holding sums of money and exchanging currency." The officer provided consistent testimony when he later testified before the grand jury about the arrest. The officers' testimony, and supporting documentary and video evidence, strongly support the Court's findings.

There is no credible evidence before the Court suggesting that the officers did not have the opportunity to see the events that they described. The defendant did not challenge the officer's ability to see the gambling activity from their car. Even the defendant's self-serving affidavit—which notes that there were parked cars between the road and the sidewalk—states that the participants in the game began to run after they saw a police car turn the corner. If the gamblers could see the police, the police could see the gamblers.

The Court affords Mr. Eusebio's declaration very little weight. His account of events was not subjected to the test of cross-examination. His narrative is self-interested. It is contradicted by the credible testimony of the officers who testified during the evidentiary hearing, the body camera footage, and sworn statements from Officer Madera from shortly after the arrest. Mr. Eusebio's declaration is also contradicted by tangible evidence. In his declaration, Mr. Eusebio states that the dice players who fled "grabbed the . . . dice that they had been playing with." However, the NYPD

6

collected three plastic dice at the scene. They were presented to the Court during the evidentiary hearing. The dice bore scratch marks of the type that the Court would expect to see on dice that had been rolled multiple times on a Manhattan sidewalk. The Court does not credit Mr. Eusebio's account of his conduct.[2]

### III.   DISCUSSION

####   A.   Legal Standard

The officers arrested Mr. Eusebio without a warrant. "Such an arrest must be supported by probable cause or else it violates the Fourth Amendment." *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008). "A police officer ordinarily has probable cause to arrest when he or she 'ha[s] knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *United States v. Diaz*, 854 F.3d 197, 203 (2d Cir. 2017) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)). "While probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity,' mere suspicion is not enough." *U.S. v. Valentine*, 539 F.3d 93 (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). "In determining whether probable cause exists to arrest a suspect, '[t]he experience of a police officer is a factor to be considered . . . but the relevance of the suspect's

---

[2] In the memorandum of law presented to the Court in support of the defendant's motion, counsel asserted the following: "And the officers never attempted to articulate any reason why Mr. Eusebio's supposed participation in the game could qualify as *promotion* of gambling . . . . Instead, the officers told Mr. Eusebio that they were concerned about loitering." D. Mem. at 11 (emphasis in original). As noted, in the body camera footage, officers can be heard at least twice explaining that they had stopped the defendant and another person because they saw them participating in gambling. It is perhaps fair on the record presented to the Court to say that the officers did not explain to the defendant why the defendant's conduct would qualify as promotion of gambling (the defendant does not argue that the officers were required to provide a legal analysis of the elements of his crime to the defendant on the spot during the arrest). But it is not accurate to suggest that the body camera footage supports the conclusion that the officers were concerned about loitering and not gambling.

conduct should be sufficiently articulable that its import can be understood by the average reasonably prudent person.'" *Id.* (quoting *United States v. Fisher*, 702 F.2d 372, 378 (2d. Cir. 1983)).

**B.    Analysis**

There was probable cause to arrest Mr. Eusebio for a violation of New York Penal Law § 240.35(2) because Officer Madera personally observed Mr. Eusebio gambling. Under New York Penal Law § 240.35(2), "[a] person is guilty of loitering when he . . . [l]oiters or remains in a public place for the purpose of gambling with cards, dice or other gambling paraphernalia." Under New York Penal Law § 225.00(2), "[a] person engages in gambling when he stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome." "As one New York court explained, '[t]o break it down to its simplest terms, in New York State it is a violation for people to roll dice for money even if they are only players, if they do so in a public place.'" *Kee v. City of New York*, 12 F.4th 150, 159 (2d Cir. 2021) (quoting *People v. Greenhill*, 94 N.Y.S.3d 539, 2017 WL 6601862, at *3 (Crim. Ct. Dec. 26, 2017)).

"It is also important to note that loitering for the purpose of gambling is a violation under New York Law; it is not a crime." *Id.* "Pursuant to New York law, because loitering for the purpose of gambling is only a violation, the offense must occur in the officer's presence to provide probable cause to arrest." *Id.*

Officer Madera had probable cause to arrest Mr. Eusebio for a violation of New York Penal Law § 240.35(2) because he saw Mr. Eusebio gambling. Officer Madera personally observed Mr. Eusebio in a group of 8 to 10 people. He was rolling dice and exchanging money with others in the group. The game was happening on the sidewalk in a public place. This provided the officers

probable cause to arrest Mr. Eusebio for a violation of that statute.[3] Because the search was conducted incident to a lawful arrest, it did not violate the Fourth Amendment.

## IV. CONCLUSION

For the foregoing reasons, the motion to suppress is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 387.

SO ORDERED.

Dated: September 17, 2024
New York, New York

GREGORY H. WOODS
United States District Judge

---

[3] Officer Madera's observations would also likely support a finding of probable cause for other violations of the New York Penal Law—in particular, New York Penal Law §§ 225.30 and 225.05. The Court need not engage in an analysis of those alternatives here.