UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ALEXANDER FRANCISCO,
    a/k/a "Javy,"
ARISTIDES RAMIREZ,
    a/k/a "AR," and
ALVIN EUSEBIO,
    a/k/a "Goo",

                    *Defendants*.

No. 22 Cr. 522 (GHW)


**DEFENDANT ALVIN EUSEBIO'S OPPOSITION TO
THE GOVERNMENT'S MOTIONS IN LIMINE**

MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.

Telemachus P. Kasulis
Peter Menz
565 Fifth Avenue
New York, NY 10017
Tel: (212) 856-9600
    *Attorneys for Alvin Eusebio*

Dated: October 4, 2024

# TABLE OF CONTENTS

I.    The Government Must Disclose the True Names of Government Witnesses to Defense Counsel..................................................................................................................................1

    a.    Relevant Law ................................................................................................ 1

    b.    Application..................................................................................................... 2

II.   The Court Should Not Admit Evidence of Mr. Eusebio's Criminal History ..................... 7

    a.    Relevant Law ................................................................................................ 7

      i.    Direct Evidence......................................................................................... 7

      ii.   Fed. R. Evid. 404 ..................................................................................... 7

      iii.  Fed. R. Evid. 403 ..................................................................................... 8

    b.    The Florida Arrest and Conviction Are Inadmissible ........................................ 9

    c.    The Maryland Arrest and Conviction Are Inadmissible ................................... 12

III.  Conclusion .................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Cotto v. Fischer,*
   No. 09 Civ. 9813, 2012 WL 5500575 (S.D.N.Y. Aug. 23, 2012) ................................................ 5

*Davis v. Alaska,*
   415 U.S. 308 (1974) ................................................................................................................. 1

*Michigan v. Lucas,*
   500 U.S. 145 (1991) ............................................................................................................ 2, 4

*Olden v. Kentucky,*
   488 U.S. 227 (1988) ................................................................................................................. 6

*Pointer v. Texas,*
   380 U.S. 400 (1965) ................................................................................................................. 1

*Rivas v. Fischer,*
   780 F.3d 529 (2d Cir. 2015) ................................................................................................... 2

*Smith v. Illinois,*
   390 U.S. 129 (1968) ................................................................................................................. 1

*Strickland v. Washington,*
   466 U.S. 668 (1984) ............................................................................................................ 2, 5

*United States v. Alimehmeti,*
   284 F. Supp. 3d 477 (S.D.N.Y. 2018) ................................................................................... 3

*United States v. Bagaric,*
   706 F.2d 42 (2d Cir. 1983) ..................................................................................................... 7

*United States v. Benedetto,*
   571 F.2d 1246 (2d Cir. 1978) ................................................................................................. 8

*United States v. Brennan,*
   798 F.2d 581 (2d Cir. 1986) ................................................................................................. 13

*United States v. Carboni*,
   204 F.3d 39 (2d Cir. 2000) ................................................................. 7

*United States v. Colon*,
   880 F.2d 650 (2d Cir. 1989) ............................................................. 14

*United States v. Cronic*,
   466 U.S. 648 (1984) .......................................................................... 2

*United States v. Figueroa*,
   618 F.2d 934 (2d Cir. 1980) ............................................................... 9

*United States v. Frazier*,
   No. 15 Cr. 153, 2019 WL 761912 (S.D.N.Y. Feb. 21, 2019) ............. 11

*United States v. Garcia*,
   291 F.3d 127 (2d Cir. 2002) ............................................................... 8

*United States v. Hart*,
   852 F. App'x 596 (2d Cir. 2021) ...................................................... 10

*United States v. Hernandez*,
   No. 12 Cr. 809, 2013 WL 3936185 (S.D.N.Y. Jul. 29, 2013) ............. 3

*United States v. Hsu*,
   669 F.3d 112 (2d Cir. 2012) ........................................................... 8, 9

*United States v. Lee*,
   No. 23 Cr. 591, 2024 WL 2852164 (S.D.N.Y. May 30, 2024) ............ 3

*United States v. Levy*,
   731 F.2d 997 (2d Cir. 1984) ......................................................... 7, 12

*United States v. Levy*,
   No. 04 Cr. 559, 2006 WL 721515 (E.D.N.Y. Mar. 20, 2006) ............ 11

*United States v. Marti*,
   421 F.2d 1263 (2d Cir. 1970) ............................................................. 2

*United States v. Martoma*,
   No. 12 Cr. 973, 2014 WL 31191 (S.D.N.Y. Jan. 6, 2014) ................. 13

*United States v. McCallum*,
  584 F.3d 471 (2d Cir. 2009) ................................................................. 8, 9, 11, 14

*United States v. Mial*,
  No. 21 Cr. 499, 2022 WL 5240988 (S.D.N.Y. Oct. 6, 2022) ........................................... 3

*United States v. Miller*,
  641 F. Supp. 2d 161 (E.D.N.Y. 2009) ............................................................... 14

*United States v. Naseer*,
  No. 10 Cr. 19, 2015 WL 13843166 (E.D.N.Y. Jan. 26, 2015) ......................................... 6

*United States v. Nektalov*,
  325 F. Supp. 2d 367 (S.D.N.Y. 2004) ................................................................ 7

*United States v. Pipola*,
  83 F.3d 556 (2d Cir. 1996) ........................................................................ 14

*United States v. Rivera*,
  No. 13 Cr. 149, 2015 WL 1875658 (E.D.N.Y. Apr. 22, 2015) ........................................ 10

*United States v. Roldan-Zapata*,
  916 F.2d 795 (2d Cir. 1990) ...................................................................... 11

*United States v. Roopnarine*,
  718 F. App'x 797 (11th Cir. 2017) ............................................................... 5, 6

*United States v. Rosa*,
  11 F.3d 315 (2d Cir. 1993) ....................................................................... 14

*United States v. Sanders*,
  964 F.2d 296 (4th Cir. 1992) ..................................................................... 11

*United States v. Stein*,
  521 F. Supp. 2d 266 (S.D.N.Y. 2007) .............................................................. 13

*United States v. Thai*,
  29 F.3d 785 (2d Cir. 1994) ........................................................................ 7

*United States v. Urena*,
    8 F. Supp. 3d 568 (S.D.N.Y. 2014) ............................................................. 3

*United States v. Zhong*,
    26 F.4th 536 (2d Cir. 2022) .................................................................. 8, 11

*Washington v. Walsh*,
    No. 08 Civ. 6237, 2010 WL 423056, (S.D.N.Y. Feb. 5, 2010) ................................. 5

## Rules

Fed. R. Evid. 403 .................................................................... 8, 9, 11, 14

Fed. R. Evid. 404 .................................................................. 7, 8, 10, 13, 14

Alvin Eusebio, by undersigned counsel, respectfully submits this memorandum of law in opposition to certain of the government's motions *in limine*. In particular, Mr. Eusebio 1) opposes the government's request to withhold the true names of two witnesses from defense counsel and 2) opposes the government's motion to admit evidence relating to two past convictions.

## I. The Government Must Disclose the True Names of Government Witnesses to Defense Counsel

The government has moved *in limine* to close the courtroom during the testimony of two NYPD undercover officers (the "Active UCs"); to permit the Active UCs, as well as one inactive undercover officer, to testify pseudonymously; and to withhold the true names of the Active UCs from defense counsel. Mr. Eusebio consents to this relief except as to the true names of the Active UCs. Consistent with settled practice in this Circuit, this Court should order that the true names be disclosed to defense counsel on an attorneys' eyes only basis, which properly balances the government's safety concerns with Mr. Eusebio's Sixth Amendment rights.

### a. Relevant Law

The Sixth Amendment guarantees criminal defendants the right to confront witnesses against them. *See Pointer v. Texas*, 380 U.S. 400, 404-05 (1965). That includes the right of cross-examination, which is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). The Supreme Court has made clear that effective cross-examination hinges on understanding the witness's identity. Indeed, because a witness's true name opens "countless avenues of in-court examination and out-of-court investigation," forbidding "this most rudimentary inquiry . . . is effectively to emasculate the right of cross-examination itself." *Smith v. Illinois*, 390 U.S. 129, 131 (1968). Although this right is not absolute, restrictions on the right of confrontation "may

not be arbitrary or disproportionate to the purposes they are designed to serve." *Michigan v. Lucas*, 500 U.S. 145, 151 (1991) (quotation marks omitted).

The Sixth Amendment also guarantees the right to the assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 654 (1984). To make "the adversarial testing process work," and to therefore vindicate the Sixth Amendment's promise, defense counsel must, among other things, make reasonable investigations into the government's case, including by obtaining relevant impeachment material. *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984); *Rivas v. Fischer*, 780 F.3d 529, 550 (2d Cir. 2015) (trial counsel was constitutionally deficient for relying on "two perfunctory items of impeachment evidence" as to key government witness).

### b. Application

The issue identified by the government's motion—that disclosing a witness's identity could arguably lead to safety risks—is not novel. In the Second Circuit, courts have long balanced defendants' Sixth Amendment rights with these legitimate concerns in exactly the manner that Mr. Eusebio proposes here: disclosing the true names to defense counsel on an attorneys' eyes only basis. The government does not explain why its non-disclosure "solution" guarantees any greater level of safety. Accordingly, this restriction on Mr. Eusebio's Sixth Amendment rights is "disproportionate to the purposes [it is] designed to serve" and therefore constitutionally unsound. *Lucas*, 500 U.S. at 151.

Over fifty years ago, the Second Circuit observed that giving identifying information "privately to defense counsel" appropriately balances a witness's fear of reprisal against a defendant's legitimate need for this information, "which may be helpful in investigating the witness out of court or in further cross-examination." *United States v. Marti*, 421 F.2d 1263, 1266 (2d Cir. 1970) (rejecting claim of prejudice when the prosecution offered to communicate

witness's identifying information "privately to defense counsel"). Consistent with that approach, numerous courts in this circuit have imposed significant disclosure restrictions on undercover officers' identifying information and testimony, while still permitting defense counsel access to the true names so an appropriate investigation may be conducted.[1]

As the government cannot show that caselaw favors their non-disclosure "solution," they instead harp on the supposed risks of disclosure in this case and the purported irrelevance of the officer's identities. Because those arguments conflate broad public disclosure with the extremely limited disclosure proposed by Mr. Eusebio, they fail to carry the government's burden.

*First*, the government notes that a different defendant (not Mr. Eusebio and not that defendant's counsel) violated the protective order in this matter. That is doubly irrelevant. As an initial matter, Mr. Eusebio is subject to the same protective order and has never violated it. More pertinently, under Mr. Eusebio's proposal, *neither Mr. Eusebio nor any other defendant will receive the names of the Active UCs*. The supposed risk of disclosure is wholly illusory.

*Second*, the government argues that Mr. Eusebio has a significant criminal history, including firearms offenses and a twenty-year-old murder conviction. Although this argument is at least specific to Mr. Eusebio, it likewise fails to grapple with the specific restrictions proposed by defense counsel—which, again, ensure that *Mr. Eusebio will not receive the names of the*

---

[1] *United States v. Lee*, No. 23 Cr. 591, 2024 WL 2852164, at *4 (S.D.N.Y. May 30, 2024) ("The government shall disclose to defense counsel the true name of the UC on an 'attorney's eyes only' basis."); *United States v. Mial*, No. 21 Cr. 499, 2022 WL 5240988, at *6 n.4 (S.D.N.Y. Oct. 6, 2022) (defense counsel provided with names of testifying officers so they could "undertak[e] appropriate diligence as to them"); *United States v. Alimehmeti*, 284 F. Supp. 3d 477, 491 n.9 (S.D.N.Y. 2018) (same); *United States v. Urena*, 8 F. Supp. 3d 568, 572 (S.D.N.Y. 2014) (defense counsel provided with true name so they could "conduct an independent investigation as to this witness"); *United States v. Hernandez*, No. 12 Cr. 809, 2013 WL 3936185, at *3 (S.D.N.Y. Jul. 29, 2013) (defense counsel provided with true name "to allow the defense to fully investigate the Agent out of court to prepare for cross-examination").

*Active UCs*. The government's focus on decades-old conduct is an attempt to distract from the actual dispute before the court.

*Finally*, the government belatedly submitted a declaration from Joseph Kenny, the NYPD's Chief of Detectives. ECF 525-1 ("Kenny Decl."). Although Chief Kenny correctly notes that police officers may face significant dangers in their line of work, he makes no attempt to explain why the disclosure of identifying information *to defense counsel* can be linked to acts of violence against police officers. Indeed, much of his declaration is not devoted to the risks faced by the Active UCs in this case (or even undercover officers in general), but about acts of violence against police officers in general, whether in New York or elsewhere. Kenny Decl. ¶¶ 24-36 (citing incidents in Iowa, Texas, and Louisiana). Tragic as those statistics and anecdotes are, they are ultimately irrelevant as to the specific question posed here: whether disclosure *to defense counsel* poses any meaningful risk of harm. Chief Kenny's failure to address the only disputed issue underscores that the government's proposal is "disproportionate" to their legitimate safety concerns, and therefore constitutionally unsound. *Lucas*, 500 U.S. at 151.

Also unavailing is the government's suggestion that Mr. Eusebio cannot demonstrate any particular need for the Active UCs' true names, because 1) the government is running its "routine" *Giglio* checks and 2) the true names "have no specific relevance to the case or to the Active UCs' credibility or their knowledge regarding the topics they will testify about." Gov. MIL at 11, 13. Respectfully, Mr. Eusebio cannot accept the government's assurances in this regard. As to the thoroughness of the government's *Giglio* checks, it is the job of defense counsel, not the government, to prepare for cross-examination of witnesses. It is possible that the defense can think of open database checks or other means of investigation that the government cannot, and the defense should not have to divulge its cross-examination strategy to

the government in order to obtain this information. Strikingly, the government represents that it currently is aware of *no* material that must be disclosed under *Giglio*. To fulfill Mr. Eusebio's Sixth Amendment rights, defense counsel is ethically obligated to make its own reasonable investigation rather than relying on the government's word. *Strickland*, 466 U.S. at 690-91; *Rivas*, 780 F.3d at 550. As to the government's argument that the true names of the Active UCs cannot *possibly* bear on the case, their credibility, or their knowledge of relevant facts, that assertion is backed only by the government's word. Mr. Eusebio has no means to test these statements, and the Court should not rely on them in deciding the motion.

Finally, the government elsewhere suggests that caselaw favors their position. Rather than address the numerous cases where Mr. Eusebio's precise solution has been adopted and approved, the government again answers the wrong question. All but two of their examples arose in habeas proceedings or on direct appeal, and therefore addressed the witness's anonymity in the context of the full trial record. *Washington v. Walsh*, No. 08 Civ. 6237, 2010 WL 423056, (S.D.N.Y. Feb. 5, 2010) (habeas proceeding); *Cotto v. Fischer*, No. 09 Civ 9813, 2012 WL 5500575 (S.D.N.Y. Aug. 23, 2012) (same); *United States v. Roopnarine*, 718 F. App'x 797, 808-09 (11th Cir. 2017) (direct appeal). These courts ultimately rejected any claim of error because the defendant had either consented (implicitly or implicitly) to the anonymous testimony; because the defendant had in fact still been able to obtain impeaching information; or because the more stringent standard applicable to postconviction proceedings had not been satisfied. *Washington*, 2010 WL 423056, at *7-9 (state trial court "did not unreasonably apply clearly established federal law" in light of, *inter alia*, the fact that "counsel agreed to keeping the detectives' identities confidential at the trial" and counsel "was in a position to request their disciplinary files and other potential impeachment material . . . [but] chose not to do so"); *Cotto*,

2012 WL 5500575, at *18, *36 (arguments regarding lack of access to impeachment material were "unpreserved," and state court's rejection of same arguments was "neither contrary to, nor an unreasonable application of, Supreme Court precedent"); *Roopnarine*, 718 F. App'x at 809 (11th Cir. 2017) (defendant had invited error and could not show any prejudice arising from nondisclosure, given that only argument for disclosure rested on "hypothetical" events that "would not have been presented to the jury" in any event).

Of the two cases that assessed the actual question before this court, neither is on all fours. Not only did *United States v. Naseer* involve unique national security concerns not present here, the defendant represented himself *pro se* in that matter, meaning it was impossible to disclose true names on an attorneys' eyes only basis. *United States v. Naseer*, No. 10 Cr. 19, 2015 WL 13843166, at *3 (E.D.N.Y. Jan. 26, 2015) (noting heightened risks from "terrorist organizations"); *United States v. Naseer*, No. 10 Cr. 19, ECF 322 (E.D.N.Y. Jun. 26, 2014) (order relieving counsel and permitting defendant to proceed *pro se*). The other hinged on a promise by the government to provide unusually extensive *Giglio* disclosures, including "information that extended beyond the witnesses' character for truthfulness or credibility"; "all possibly substantiated allegations and potentially relevant information"; and information gleaned from "extensive questions about matters that might bear on their credibility as a witness." *United States v. Donovan*, No. 20 Cr. 374, ECF 91 at 2 (E.D.N.Y. Dec. 20, 2021). Although Mr. Eusebio submits that *Donovan* was wrongly decided as a matter of constitutional law, these extensive disclosures far outstrip the "routine" checks the government has committed to here (which, again, have apparently yielded *zero* information that will be disclosed to the defense).

In short, while the Sixth Amendment permits "reasonable limits" on cross-examination, the proposed limitation here is "beyond reason." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988).

Accordingly, the government should be ordered to disclose the true names of the Active UCs to defense counsel. Defense counsel is willing to meet and confer with the government as to additional internal safeguards, such as disclosing the true names to counsel shortly before trial.

## II.     The Court Should Not Admit Evidence of Mr. Eusebio's Criminal History

### a.     Relevant Law

#### i.     Direct Evidence

When the government charges conspiracy, "uncharged acts may be admissible as direct evidence of the conspiracy itself," but typically only if they are "within the scope of the conspiracy." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) (quoting *United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir. 1983)). An uncharged act may also be admissible as direct evidence "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).

However, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004). Improperly admitting uncharged acts as direct evidence may be reversible error even when the act might have been admissible under a Rule 404(b) analysis. *United States v. Levy*, 731 F.2d 997, 1004-05 (2d Cir. 1984) (reversing judgment of conviction and remanding for new trial).

#### ii.     Fed. R. Evid. 404(b)

To admit prior act evidence under Rule 404(b), the district court must find that the prior act evidence is "offered for a proper purpose" and that the evidence is "relevant to a disputed

issue." *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002). If requested, the court must also give a limiting instruction as to the evidence. *Id.* Under no circumstances can evidence be admitted to show propensity. *See* Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); Fed. R. Evid. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

Although the Second Circuit follows an "inclusionary" approach to Rule 404(b), the district court "may not freely admit evidence of conduct simply because it relates to the charged crimes or the government offers it for a purpose other than to demonstrate the defendant's propensity to commit the alleged conduct." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022). The district court must always be attuned to the risk that nominally proper 404(b) evidence is in fact "propensity evidence in sheep's clothing," *United States v. McCallum*, 584 F.3d 471, 477 (2d Cir. 2009), and therefore cannot "stop[] the analysis" once the government "demonstrate[s] that the evidence is not offered solely to show that the defendant is a bad person," *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978).

### iii. Fed. R. Evid. 403

Whether admissible as direct evidence or Rule 404(b) evidence, prior bad acts may not be admitted when they fail Fed. R. Evid. 403's balancing test, *i.e.*, when their probative value is "substantially outweighed by a danger of ... unfair prejudice." *United States v. Hsu*, 669 F.3d 112, 119 (2d Cir. 2012) (quotation marks omitted).

Crucially, past *convictions* demand "particularly searching, conscientious scrutiny" before they can be admitted. *McCallum*, 584 F.3d at 476. The Second Circuit has repeatedly

instructed that the Rule 403 balancing test is "particularly important in connection with evidence of other crimes," *Hsu*, 669 F.3d at 112 (evaluating evidence of past convictions for Ponzi scheme), as prior convictions "bear the imprimatur of the judicial system and indicia of official reliability," and therefore are "far more likely to be received as potent evidence of propensity." *McCallum*, 584 F.3d at 476; *accord United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (evidence of a prior conviction is necessarily "prejudicial to the extent that it also tends to prove a defendant's propensity to commit crimes").

### b. The Florida Arrest and Conviction Are Inadmissible

Mr. Eusebio was arrested in Florida in March 2022. Although initially charged in state court, those charges were dismissed and Mr. Eusebio ultimately pleaded guilty in the Southern District of Florida to being a felon in possession of a firearm. The government seeks to introduce evidence of 1) narcotics allegedly recovered from the vehicle Mr. Eusebio was driving and 2) Mr. Eusebio's possession of a handgun and resulting conviction.[2] These requests should be denied.

---

[2] As an initial matter, Mr. Eusebio cannot fully respond to the government's attempt to introduce evidence of his purported possession of narcotics in Florida, because it is unclear how the government will prove those allegations. As noted in Mr. Eusebio's motion *in limine*, the only discovery produced to Mr. Eusebio regarding his arrest in Florida is his Presentence Investigation Report and the agreed-upon factual proffer in his federal firearms case. ECF 513 at 3. Mr. Eusebio's Presentence Investigation Report only states that, upon a search of the vehicle he was driving, "suspected" oxycodone and cocaine were recovered. Neither the nature nor the quantity of the recovered substances was ever adjudicated in court, and Mr. Eusebio did not allocute to possessing cocaine or oxycodone. *See United States v. Eusebio*, No. 22 Cr. 20178, ECF 23 (S.D. Fla. Feb. 14, 2023). The government has not produced to Mr. Eusebio any other evidence regarding the recovered substances, nor has it announced its intention to call an expert regarding the identification or quantity of those substances, as it has done for other narcotics evidence in this case. Any such disclosure at this stage, of course, would be grossly untimely and severely prejudicial to Mr. Eusebio. ECF 346 (expert disclosures by government due August 2, 2024). Mr. Eusebio therefore reserves his right to further respond to these allegations when the nature of the government's proof becomes evident.

Strikingly, the government has not argued that this evidence is admissible under Rule 404(b): it only argues that Mr. Eusebio's possession of a handgun and alleged possession of narcotics *in Florida* is direct evidence of a charged scheme that - according to the government's own allegations - occurred *over a one block span in Manhattan*. Gov. MIL at 4 ("From at least in or about 2019 through at least in or about January 2024, the Defendants ran a drug trafficking organization (the "174th Street Crew," or the "Crew") *between 174th and 175th Streets on Amsterdam Avenue in Manhattan* (the "Set")). The government's assertion that certain acts are "direct evidence" does not make them so. *See United States v. Hart*, 852 F. App'x 596, 599 (2d Cir. 2021) (declining to hold that defendant's post-arrest statement was admissible as direct evidence, as it was "not clearly direct evidence of the conspiracy"); *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1875658, at *6 (E.D.N.Y. Apr. 22, 2015) (government "failed to demonstrate" that proffered evidence "constitute[d] direct evidence of the defendants' charged offenses").

All the Court has is a series of bare-bone unsworn allegations as to Mr. Eusebio's purported participation in the charged conspiracy while he resided in Florida. These bald assertions are insufficient to admit the narcotics evidence. The evidence involving a firearm is doubly infirm, since it also suffers from the additional flaws identified in Mr. Eusebio's motion *in limine*. ECF 513 at 3. As more thoroughly explained in that motion, the government's decision to charge Mr. Eusebio with "discharg[ing]" a firearm suggests that they will prove this offense through a different incident, meaning the Florida arrest can only be offered to establish Mr. Eusebio's propensity for possessing firearms. This is forbidden. *See* Fed. R. Evid. 404(a), 404(b).

Even if they were otherwise admissible – which they are not – the Florida arrest and conviction should nonetheless be excluded as unfairly prejudicial under Rule 403. The government appears to suggest that prior bad acts are *never* prejudicial, so long as they "'d[o] not involve conduct any more sensational or disturbing than the crimes with which' EUSEBIO is now charged." *See* Gov. MIL at 24 (quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)). That reductive inquiry ignores the Second Circuit's repeated instruction that "evidence of prior convictions merits particularly searching, conscientious scrutiny" under Rule 403. *McCallum*, 584 F.3d at 476. Here, evidence of Mr. Eusebio's prior arrest and a conviction for a federal firearms offense is likely to significantly and unfairly influence the jury, as the official documents relied on by the government "bear the imprimatur of the judicial system and indicia of official reliability." *Id.* The admission of this prior conviction "carries a substantial risk of prejudice," as a jury "'can hardly avoid drawing the inference that the past conviction suggests some probability that [Mr. Eusebio] committed the similar offense for which he is currently charged.'" *United States v. Frazier*, No. 15 Cr. 153, 2019 WL 761912, at *7 (S.D.N.Y. Feb. 21, 2019) (quoting *United States v. Sanders*, 964 F.2d 296, 297 (4th Cir. 1992)). That logic holds equally true even when the prior conviction is offered as direct evidence (as the government seeks to do here). *See, e.g.*, *United States v. Levy*, No. 04 Cr. 559, 2006 WL 721515, at *10 n.10 (E.D.N.Y. Mar. 20, 2006) (precluding evidence of a conviction and plea allocution which was offered as direct evidence, given that such evidence would "obviously raise additional Rule 403 issues").

Finally, Mr. Eusebio's Florida conviction involves conduct that is in fact "significantly more sensational and disturbing than the charged crimes," and therefore carries an additional risk of unfair prejudice for that reason. *Zhong*, 26 F.4th at 553. The government incorrectly notes

that Mr. Eusebio was convicted for "simple possession of a firearm." Mr. Eusebio was convicted for being a *felon* in possession of a firearm, such that introducing evidence of his conviction would inevitably cause the jury to infer that he has a lengthy criminal record. Here, to introduce evidence of one conviction is to introduce two. There is no limiting instruction that can cabin this prejudice and admission of this evidence would be reversible error.

For these reasons, the Government's motion to admit evidence from the Florida arrest and conviction should be denied.

### c. The Maryland Arrest and Conviction Are Inadmissible

Mr. Eusebio was arrested in September 2018 in Maryland, along with co-defendant Reginald McClure. Following that arrest, Mr. Eusebio pleaded guilty to one count of violating Md. Code Crim. Law § 5-602(a)(2), for "possess[ing] a controlled dangerous substance other than cannabis in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense a controlled dangerous substance." The government's attempt to introduce evidence relating to the Maryland arrest and conviction must likewise be denied.

*First*, the Maryland arrest and conviction are not admissible as direct evidence. The government concedes that these events "happened approximately three-and-a-half months *before* the beginning time frame alleged in the indictment," Gov. MIL at 25, but conveniently elides that both Mr. McClure and Mr. Eusebio were thereafter incarcerated as a result of the Maryland conviction, creating a significantly larger gap between the Maryland arrest and conviction and their participation in the alleged conspiracy. Given that "it is not inconceivable that acts or crimes that occur almost contemporaneously with the indicted crime may be entirely unrelated to that crime," *Levy*, 731 F.2d at 1004, this Court should not accept the government's invitation to rely without more on loose temporal proximity.

As a fallback, the government argues that the Maryland arrest and conviction is "inextricably intertwined" with the charged narcotics conspiracy, or that it arose out of the "series of transactions as the charged offense," and is therefore still admissible as direct evidence. Both contentions fail. As to the conduct being "intertwined," the government argues that the Maryland arrest and conviction occurred shortly before Mr. Eusebio and Mr. McClure allegedly joined the alleged narcotics conspiracy. But "temporal proximity alone is not sufficient to establish that charged and uncharged conduct is intertwined." *United States v. Martoma*, No. 12 Cr. 973, 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014). Rather, the government must show that "details of the uncharged [crime] *are necessary to understand* the charged [crime]." *United States v. Stein*, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007) (emphasis added). Because the charged narcotics conspiracy is "straightforward and may be fully understood without reference to the uncharged conduct," the government cannot meet that burden. *Martoma*, 2014 WL 31191, at *3 (quotation marks and brackets omitted). As to the argument that the Maryland arrest and conviction arose out of the "same series of transactions," this is hard to countenance given that the government is seeking to rope in alleged conduct from well before the "series of transactions" the grand jury found probable cause to believe occurred.

*Second*, the Maryland arrest and conviction are not admissible on this record as Rule 404(b) evidence. The government's sole proffered purpose for this evidence is to "help the jury understand the relationship between" Mr. Eusebio and Mr. McClure. Gov. MIL at 26. As a threshold matter, the simple nature of the government's allegations regarding this relationship means that the probative value of the Maryland evidence is dubious at best. Absent this evidence, the jury will not be left with a "truncated and possibly confusing view of the respective roles" played by Mr. Eusebio and Mr. McClure. *United States v. Brennan*, 798 F.2d 581, 590 (2d

Cir. 1986). More pertinently, the government's skeletal description of the conduct does not shed light on that relationship: it only shows that both Mr. Eusebio and Mr. McClure were arrested and convicted in Maryland for narcotics offenses. This evidence does not show, for instance, how Mr. Eusebio "played a leadership role" or how he and Mr. McClure "performed assigned roles" that mirror their roles in the charged conduct. *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996). Should the Court admit evidence that Mr. Eusebio and Mr. McClure were both convicted in Maryland, the jury will not be left with a superior understanding of "how the illegal relationship between participants in the crime developed." *United States v. Rosa*, 11 F.3d 315, 334 (2d Cir. 1993)—it will simply learn that Mr. Eusebio has a rap sheet.

*Third*, and finally, admitting the Maryland arrest and conviction would be unfairly prejudicial to Mr. Eusebio in any event. As the Second Circuit has repeatedly instructed, "district courts must exercise great care to ensure that juries are not permitted to conclude that because a defendant has committed a similar crime before, he or she therefore has a criminal propensity sufficient to justify conviction in the case at hand." *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989). Here, the Maryland arrest and conviction carries very slight (if any) probative value as to his relationship with Mr. McClure. *United States v. Miller*, 641 F. Supp. 2d 161, 166 (E.D.N.Y. 2009) (granting motion to exclude under Fed. R. Evid. 403 when challenged evidence had only "limited probative value"). And as with the corresponding Florida evidence, the official information with which the government would prove his conviction is "far more likely to be received as potent evidence of propensity" and unfairly prejudicial for that reason. *McCallum*, 584 F.3d at 476. It must be excluded.

### III.    Conclusion

For the reasons stated above, Mr. Eusebio respectfully requests that the Court 1) deny the government's request to preclude defense counsel from being provided the names of the Active UCs on an attorneys' eyes only basis, and 2) deny the request to admit evidence of Mr. Eusebio's arrests and convictions in Florida and Maryland.  Mr. Eusebio does not oppose the other relief requested in the Motion.

Dated: October 4, 2024                    MORVILLO ABRAMOWITZ GRAND
     New York, NY                        IASON & ANELLO P.C.

*/s/ Telemachus P. Kasulis*
Telemachus P. Kasulis
Peter Menz
565 Fifth Avenue
New York, NY 10017
Tel: (212) 856-9600
Fax: (212) 856-9494
tkasulis@maglaw.com
pmenz@maglaw.com
   *Attorneys for Alvin Eusebio*