UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ALEXANDER FRANCISCO,
    a/k/a "Javy,"
ARISTIDES RAMIREZ,
    a/k/a "AR," and
ALVIN EUSEBIO,
    a/k/a "Goo,"

                                      *Defendants*.

No. 22 Cr. 522 (GHW)

# DEFENDANT ALVIN EUSEBIO'S
# REPLY IN SUPPORT OF MOTIONS IN LIMINE

Morvillo Abramowitz Grand
Iason & Anello P.C.

Telemachus P. Kasulis
Peter Menz
565 Fifth Avenue
New York, NY 10017
Tel: (212) 856-9600
   *Attorneys for Alvin Eusebio*

Dated: October 11, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii
ARGUMENT ..................................................................................................................... 1
   I.   The Government Cannot Explain Why Using The Term "Stash House" Is Necessary ...... 1
   II.   The Florida Conduct is Inadmissible ................................................................... 3
   III.   Inspector Hernandez's Testimony Should Be Precluded ...................................... 5
      a.   The Government Violated Fed. R. Crim. P. 16 ................................................. 5
      b.   This Court Should Reserve Decision as to Whether Inspector Hernandez is Qualified to Testify ............................................................................................. 9
CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Carpenter v. United States*,
    585 U.S. 296 (2018) ............................................................................................................ 6

*In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985*,
    767 F.2d 26 (2d Cir. 1985) ................................................................................................ 8, 9

*Old Chief v. United States*,
    519 U.S. 172 (1997) ............................................................................................................ 2

*Sprint/United Management Co. v. Mendelsohn*,
    552 U.S. 379 (2008) ............................................................................................................ 1

*United States v. Abreu*,
    No. 22-2676, 2023 WL 8270427 (2d Cir. Nov. 30, 2023) .................................................. 2

*United States v. Andreadis*,
    366 F.2d 423 (2d Cir. 1966) ................................................................................................ 4

*United States v. Basciano*,
    599 F.3d 184 (2d Cir. 2010) ................................................................................................ 4

*United States v. Dabney*,
    498 F.3d 455 (7th Cir. 2007) ............................................................................................... 4

*United States v. Figueroa*,
    618 F.2d 934 (2d Cir. 1980) ................................................................................................ 4

*United States v. Frederick*,
    702 F. Supp. 2d 32 (E.D.N.Y. 2009) .................................................................................... 4

*United States v. Giovinco*,
    382 F. Supp. 3d 299 (S.D.N.Y. 2019) ................................................................................. 4

*United States v. Helbrans*,
    No. 19 Cr. 497, 2021 WL 4778525 (S.D.N.Y. Oct. 12, 2021) ............................................ 2

*United States v. Kwok*,
    No. 23 Cr. 118, 2024 WL 1773143 (S.D.N.Y. Apr. 4, 2024) ........................................... 6, 7

*United States v. Lee*,
    834 F.3d 145 (2d Cir. 2016) ................................................................................................ 6

*United States v. Lopez*,
 No. 18 Cr. 6, 2019 WL 1570818 (S.D.N.Y. Apr. 11, 2019)......................................................... 6

*United States v. McCallum*,
 584 F.3d 471 (2d Cir. 2009)...................................................................................................... 1, 4

*United States v. Moran-Toala*,
 726 F.3d 334 (2d Cir. 2013)......................................................................................................... 5

*United States v. Mrabet*,
 703 F. Supp. 3d 442 (S.D.N.Y. 2023) ......................................................................................... 9

*United States v. Nektalov*,
 325 F. Supp. 2d 367 (S.D.N.Y. 2004) ......................................................................................... 3

*United States v. Rainford*,
 110 F.4th 455 (2d Cir. 2024)........................................................................................................ 3

*United States v. Rajaratnam*,
 No. 09 Cr. 1184, 2011 WL 723530 (S.D.N.Y. Feb. 25, 2011) ....................................................... 6

*United States v. Rivera*,
 No. 13 Cr. 149, 2015 WL 1875658 (E.D.N.Y. Apr. 22, 2015) ....................................................... 3

*United States v. Smith*,
 727 F.2d 214 (2d Cir. 1984)......................................................................................................... 1

*United States v. Townsend*,
 No. 06 Cr. 34, 2007 WL 1288597 (S.D.N.Y. May 1, 2007) .......................................................... 3

*United States v. Ulbricht*,
 858 F.3d 71 (2d Cir. 2017).......................................................................................................... 6

*United States v. Valle*,
 No. 12 Cr. 847, 2013 WL 440687 (S.D.N.Y. Feb. 2, 2013) .......................................................... 6

*United States v. Watts*,
 934 F. Supp. 2d 451 (E.D.N.Y. 2013)...................................................................................... 1, 3

*United States v. Wilson*,
 11 F.3d 346 (2d Cir. 1993).......................................................................................................... 2

**Rules**

Fed. R. Crim. P. 16............................................................................................................... 5, 6, 9

Fed. R. Evid. 403 ................................................................................................................. 1, 2, 4

Fed. R. Evid. 404 ............................................................................................................. 3

Fed. R. Evid. 702 ..................................................................................................... 8, 9, 10

Alvin Eusebio, through undersigned counsel, respectfully submits this memorandum of law in further support of his motions *in limine*. ECF 512-13.

## **ARGUMENT**

### I. The Government Cannot Explain Why Using The Term "Stash House" Is Necessary

The government's opposition rests on a fundamental misunderstanding of what Mr. Eusebio requested and what Fed. R. Evid. 403 requires. Mr. Eusebio does not contend that the term "stash house" is so prejudicial that it could *never* be employed during a criminal trial. But the relevant question under Fed. R. Evid. 403 is whether, in the *particular case at hand*, the "probative value of the evidence is worth what it costs." *United States v. Smith*, 727 F.2d 214, 220 (2d Cir. 1984) (quotation marks omitted). Here, the term "stash house" adds little (if anything) to the government's case, but "could be perceived to have a pejorative meaning." *United States v. Watts*, 934 F. Supp. 2d 451, 482 (E.D.N.Y. 2013). As such, it is properly precluded under Rule 403.

Although it is beyond debate that Fed. R. Evid. 403 requires a "fact-intensive, context-specific inquiry," *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008), the government again suggests that the Rule dictates a simple, bright-line test: evidence is admissible when it is "not more inflammatory than the charged crime[s]." ECF 532 at 1 ("Gov't Opp.").[1] The government then reasons that, because Mr. Eusebio is charged with a drug trafficking

---

[1] The government first raised this argument in its own motion *in limine* to argue that two of Mr. Eusebio's past convictions were inadmissible. As explained in Mr. Eusebio's opposition to that motion, that proposition is particularly inaccurate as to evidence of past convictions, which demands "particularly searching, conscientious scrutiny" under Fed. R. Evid. 403. ECF 531 at 11 (quoting *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009)).

1

offense and a related firearms offense, it is "hardly inflammatory" to use an "arguably . . . negative" term to describe that conduct. Gov't Opp. at 3.

Having applied the wrong test, the government reaches the wrong result. The government articulates no reason *why* it is necessary to use the term "stash house," other than that it "neatly conveys [a] concept to the jury in language that laypersons use every day." Gov't Opp. at 3. But the concept of a place to store things hardly requires such assistance. The proper question is whether this minimal probative value is outweighed by the risk that the jury, by hearing a slang term associated with popular depictions of drug trafficking, will unfairly associate Mr. Eusebio with the flamboyant and exaggerated images of the narcotics trade they know from popular culture.

Moreover, the probative value of this term is further diminished by the fact that the same concept can be expressed in neutral language: "the place where the drugs were stored," or something similar. *See Old Chief v. United States*, 519 U.S. 172, 184 (1997) (Fed. R. Evid. 403 analysis involves comparing "evidentiary alternatives"). Although the government protests that Mr. Eusebio's proposed alternative is "needlessly clunky" and "awkward," courts regularly use similar formulations, underscoring that Mr. Eusebio's proposal reflects standard usage. *E.g.*, *United States v. Abreu*, No. 22-2676, 2023 WL 8270427, at *2 (2d Cir. Nov. 30, 2023) (defendant "had access to and was present in the apartment where the drugs and drug paraphernalia were found"); *United States v. Wilson*, 11 F.3d 346, 355 (2d Cir. 1993) (defendant "kept the loaded gun in the apartment where drugs were stored and the proceeds from drug sales kept"). Given that the concept can be plainly expressed in neutral terms, the use of the term "stash house" does not "provide context more necessary than it is prejudicial." *United States v. Helbrans*, No. 19 Cr. 497, 2021 WL 4778525, at *17 (S.D.N.Y. Oct. 12, 2021).

To summarize: the government cannot explain why using the term "stash house" is necessary, barely addresses Mr. Eusebio's reasonable alternative, and cannot dispute that the challenged term "could be perceived to have a pejorative meaning." *Watts*, 934 F. Supp. 2d at 482. The government should be precluded from using this term at trial.

## II. The Florida Conduct is Inadmissible

Based on the government's opposition and its motion *in limine*, Mr. Eusebio understands that that the government intends to argue that his March 2022 arrest and subsequent plea to being a felon in possession of a firearm constitute direct evidence of the charged conspiracy. As noted in Mr. Eusebio's opening brief, there is a fundamental mismatch between the firearms charge in the Indictment, which alleges that the firearm was discharged, and the evidence in Florida, which only addresses possession of a firearm. But there is an equally jarring mismatch between the charged conspiracy - which centers on a single block in Manhattan - and Mr. Eusebio's activities in Florida. To connect these far-flung dots, the government proffers unsworn statements and assurances of what the evidence might eventually show. The Court cannot rule that Mr. Eusebio's Florida arrest and conviction constitute direct evidence on this record, as "the government's word is not evidence." *United States v. Rainford*, 110 F.4th 455, 489 (2d Cir. 2024). Courts regularly reject similar efforts. *See, e.g.*, *United States v. Rivera*, No. 13 Cr. 149, 2015 WL 1875658, at *6 (E.D.N.Y. Apr. 22, 2015) (government "failed to demonstrate" that proffered evidence "constitute[d] direct evidence of the defendants' charged offenses"); *United States v. Townsend*, No. 06 Cr. 34, 2007 WL 1288597, at *2 (S.D.N.Y. May 1, 2007) (allegations made in "conclusory fashion" did not satisfy government's burden to show that proffered acts were direct evidence). And although courts in this district regularly consider whether such acts are admissible under Fed. R. Evid. 404(b) "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime," *United States v. Nektalov*, 325 F. Supp. 2d 367,

3

372 (S.D.N.Y. 2004), the government conspicuously does not make that argument here. Instead, the government relies on cases where it was undisputed that the prior conviction was for precisely the same conduct charged in the indictment.[2] Put simply, that is not this case.

Finally, even if the Court finds that the underlying conduct is admissible (which it is not), the government should not be permitted to prove that conduct through the fact of Mr. Eusebio's prior conviction. Evidence of a prior conviction demands "particularly searching, conscientious scrutiny" under Fed. R. Evid. 403, because prior convictions "bear the imprimatur of the judicial system and indicia of official reliability," and therefore are "far more likely to be received as potent evidence of propensity." *United States v. McCallum*, 584 F.3d 471, 476 (2d Cir. 2009). The government refuses to grapple with the well-recognized risk that, because Mr. Eusebio has been convicted of a prior crime, the jury will be more likely to believe that he committed the one for which he is currently charged. *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980) (prior conviction is necessarily "prejudicial to the extent that it also tends to prove a defendant's propensity to commit crimes"). If the Florida conduct is admitted (which it should not be), it should reach the jury through a "focused and brief stipulation" regarding Mr. Eusebio's

---

[2] *See United States v. Andreadis*, 366 F.2d 423, 433 (2d Cir. 1966) (defendants tried in federal court for marketing certain pharmaceuticals; prior New York conviction concerned false advertising for same pharmaceuticals); *United States v. Frederick*, 702 F. Supp. 2d 32, 36 (E.D.N.Y. 2009) (undisputed that the government had brought "successive prosecution against Frederick for the same act or occurrence to which the defendant already pleaded guilty in state court"); *United States v. Dabney*, 498 F.3d 455, 457 (7th Cir. 2007) (parties agreed that the state court conviction concerned possession of "the same firearm as charged in the indictment"). The government also cites one RICO case, *United States v. Giovinco*, 382 F. Supp. 3d 299 (S.D.N.Y. 2019), in which uncharged acts were used to prove the existence of the RICO enterprise charged in the indictment: a permissible purpose not relevant here. *United States v. Basciano*, 599 F.3d 184, 207 (2d Cir. 2010) ("[P]roof of the enterprise and pattern elements of racketeering may well entail evidence of numerous criminal acts by a variety of persons.") (quotation marks omitted).

4

possession of a firearm,[3] not through the use of court documents from Mr. Eusebio's prior proceeding. *United States v. Moran-Toala*, 726 F.3d 334, 346 (2d Cir. 2013) (noting "the real problem of prejudice" that may result from the admission of a prior conviction). Indeed, the use of Mr. Eusebio's court documents would be especially problematic here, because—as the government concedes—those documents cannot be introduced unless they are redacted to remove references to Mr. Eusebio being a *felon* in possession of a firearm. Such redactions would cause additional confusion on the part of the jury and prejudice to Mr. Eusebio.

In short, because the government has not shown that the Florida evidence is direct evidence of the charged conspiracy, and because no other basis for admission has been proffered, it must be excluded.

### III. Inspector Hernandez's Testimony Should Be Precluded

#### a. The Government Violated Fed. R. Crim. P. 16

There is no credible argument that the government's initial expert disclosure (the "Initial Disclosure") complied with Fed. R. Crim. P. 16(a)(1)(G)(iii). The disclosure submitted by the government on October 5, 2024 (the "Supplemental Notice") contains specific conclusions about packaging, slang, pricing, manufacturing, and the appearance of certain drugs. These were all absent from the Initial Disclosure, despite being opinions that the government intends to elicit at trial.[4] Simply put, Mr. Eusebio did not object because the government had not submitted a formal "report"; he objected because the Initial Disclosure plainly lacked what the Rule requires.

---

[3] As noted in Mr. Eusebio's opposition to the government's motion *in limine*, Mr. Eusebio's alleged possession of narcotics in Florida stands on somewhat different footing, because Mr. Eusebio did not admit to possession in his prior proceeding. As it remains unclear how the government will prove those allegations, Mr. Eusebio still cannot fully respond to the government's attempt to introduce evidence of his purported possession of narcotics in Florida.
[4] Although the government characterizes the Supplemental Notice as a permissible update pursuant to Fed. R. Crim. P. 16(a)(1)(G)(vi), the Rule provides for supplementation when a party

5

Indeed, the government only fleetingly argues that the Initial Disclosure was compliant, quickly pivoting to the self-refuting defense that the Initial Disclosure is sufficient "when taken together with the Supplemental Notice." Gov't Opp. at 12-13. If the Initial Disclosure represented a "complete statement" of Inspector Hernandez's opinions, as required by the Rule, then the Initial Disclosure would have been sufficient by itself. It is not and was not.

Because the parties appear to agree that the Initial Disclosure flunked the Rule, the only serious question before the Court is the remedy for that violation. The government cannot dispute that "[a] district court has broad discretion in fashioning a remedy, including ordering the exclusion of evidence." *United States v. Lee*, 834 F.3d 145, 158 (2d Cir. 2016) (internal alterations omitted) (citing Fed. R. Crim. P. 16(d)). Each of the government's arguments resisting preclusion fail.

*First*, the Government argues that precluding an expert is "rarely" appropriate when Fed. R. Crim. P. 16 has been violated, citing a variety of cases in which belated disclosures were held not to be prejudicial.[5] But the government relies almost entirely on cases *predating* the 2022

---

"discovers" additional evidence that is subject to disclosure. *See* Fed. R. Crim. P. 16(c). It does not provide free-floating authority to revise or flesh out prior disclosures when convenient.

[5] Four of those cases – *United States v. Kwok*, No. 23 Cr. 118, 2024 WL 1773143 (S.D.N.Y. Apr. 4, 2024), *United States v. Valle*, No. 12 Cr. 847, 2013 WL 440687 (S.D.N.Y. Feb. 2, 2013), *United States v. Rajaratnam*, No. 09 Cr. 1184, 2011 WL 723530 (S.D.N.Y. Feb. 25, 2011), and *United States v. Lopez*, No. 18 Cr. 6, 2019 WL 1570818 (S.D.N.Y. Apr. 11, 2019) – are independently distinguishable in that they addressed a *defendant's* failure to timely comply with the expert disclosure rule. As the Second Circuit has explained, it is "especially important" to consider lesser sanctions than preclusion in a case involving the defendant's insufficient disclosures, because "[l]imiting the defense's presentation of his case implicates the fundamental right of an accused to present witnesses in his own defense." *United States v. Ulbricht*, 858 F.3d 71, 117 (2d Cir. 2017) (quotation marks omitted), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). Consistent with that need to protect a defendant's constitutional rights, these decisions therefore applied a more lenient approach than is warranted here. *E.g.*, *Rajaratnam*, 2011 WL 723530, at *6 (providing defendant with one additional opportunity to provide expert disclosures "out of an abundance of caution to avoid any prejudice to Rajaratnam").

6

amendments to the Rule. Those amendments, for the very first time, added an "enforceable deadline" to the government's submissions of expert disclosures. Advisory Comm. Note to 2022 Amendment. That "enforceable deadline" is what the government violated here. Ironically, the 2022 amendments were expressly designed to sweep away the inconsistent and unfair body of caselaw upon which the government now relies; the Advisory Committee expressly recognized that a key "shortcoming[] of the prior provisions on expert witness disclosure" was the lack of any enforceable deadline. *Id.*[6] Simply put, these pre-2022 cases did not involve the clear violation shown here. And the sole post-2022 case cited by the government – *United States v. Kwok*, No. 23 Cr. 118, 2024 WL 1773143 (S.D.N.Y. Apr. 4, 2024) – engaged in no analysis of the new deadline and instead relied on pre-2022 cases, committing the same error the government makes here. *Id.* at *3.

*Second*, the Government claims to appeal to the purpose of the Rule, characterizing the expert disclosure requirement as a "notice provision" rather than a "'gotcha' provision." Gov't Opp. at 10-11. As an initial matter, it is unclear what the government means by a "'gotcha' provision," other than a rule that carries consequences when violated. But that is exactly what the Rules Committee sought to create by adding an "enforceable deadline" to Fed. R. Crim. P. 16's expert disclosure requirements.

---

[6] That this was an express goal of the 2022 Amendments is confirmed by the minutes of the Advisory Committee on Criminal Rules, which reflect extensive discussion of the need for such a deadline. As then-chair Judge Raymond Kethledge explained at a 2019 meeting, members of the defense bar had explained that there was "no relief available to them" when they received expert disclosures almost immediately before trial, "because disclosures made so close to trial *do not violate the text of the current rule*." Minutes of Advisory Committee on Criminal Rules at 5 (September 24, 2019), available at https://www.uscourts.gov/sites/default/files/2019-09-24_cr_minutes_final_0.pdf (emphasis added) (last accessed Oct. 11, 2024). As a result, "[t]he subcommittee agreed there was a need for a rule that can be enforced." *Id.*

More fundamentally, even if the government's construction of the Rule were correct, Mr. Eusebio did not receive any valid "notice" through the government's initial disclosure. The broad topics listed in the Initial Disclosure did not permit Mr. Eusebio to prepare for cross-examination or even to assess whether Inspector Hernandez was properly qualified as an expert. And as to the three *new* topics that are included in the Supplemental Notice, Mr. Eusebio received *zero* notice that the government intended to elicit such opinions at trial. Finally, the Supplemental Notice, although more extensive than the Initial Notice, still obfuscates the link between Inspector Hernandez's expert methodology and his conclusions. Although the government argues that the rule does not "require that Inspector Hernandez be able to cite a particular source for each point made in testimony," that is unconvincing given that the Court must determine whether the expert's opinion "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d). Understanding *which* principles and methods were applied to reach particular conclusions is thus essential to determining, in advance of trial, whether the purported expert's testimony is admissible.

The government's argument that trial will not commence until November, and Mr. Eusebio still has ample time to prepare for expert testimony, is cold comfort. In the coming weeks, Mr. Eusebio will receive the government's exhibits, witness lists, and associated Section 3500 material—all of which is likely to be voluminous and which will require extensive review by Mr. Eusebio and his counsel. The Court presumably considered this potential scheduling conflict when it set the government's expert disclosure deadline for early August 2024, and should not endorse the government's patent evasion of that requirement.

*Finally*, the government repeatedly characterizes preclusion as an "extreme remedy" that should be "rarely used." Gov't Opp. at 11, 12. But this Court cannot permit the Rule's

"enforceable deadline" to be a requirement that is honored only in the breach. Indeed, courts in this district have already recognized that "the Government must take the 2022 amendment to Rule 16 seriously if it is to have its intended salutary effect." *United States v. Mrabet*, 703 F. Supp. 3d 442, 444 (S.D.N.Y. 2023). The Second Circuit confronted a similar dilemma in *In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985*, 767 F.2d 26 (2d Cir. 1985), where the panel found clear evidence that the government had improperly used a grand jury subpoena to gather evidence for trial on an already pending indictment. While recognizing that courts had been "reluctant to go beyond a simple rebuke" even when "clear violations" of that prohibition had been shown, the Circuit nonetheless quashed the subpoena, reasoning that a remedy was needed "if the rule is to have any meaning." *Id.* at 30. That logic must control here. If the 2022 amendments to Fed. R. Crim. P. 16 are to be given their intended effect, the Rule's deadline must be enforced.

For these reasons, the Court should enforce Fed. R. Crim. P. 16 and preclude Inspector Hernandez's testimony.

### b. This Court Should Reserve Decision as to Whether Inspector Hernandez is Qualified to Testify

Should the Court decline to preclude Inspector Hernandez's testimony on account of the Government's Fed. R. Crim. P. 16 violation, it should reserve decision as to whether Inspector Hernandez's testimony is properly admissible under Fed. R. Evid. 702. Although the government makes a cursory argument that Inspector Hernandez is properly qualified as an expert, Gov't Opp. at 14-15, Mr. Eusebio has not yet moved to preclude Inspector Hernandez's testimony on this ground. Rather, he explained that the wholly deficient Initial Disclosure made it impossible to determine whether Inspector Hernandez was qualified to testify at all. ECF 513 at 8-9. In light of the new information in the Supplemental Notice (received just one week ago),

Mr. Eusebio is continuing to evaluate the propriety of Inspector Hernandez's anticipated testimony. In any event, the government has only argued that Inspector Hernandez has "nearly forty years of experience" that permits him to "provide background testimony elucidating topics outside the knowledge of the average juror." Gov't Opp. at 15. That conclusory statement, even if taken at face value, cannot demonstrate that the particular opinion offered by Inspector Hernandez in this case "reflects a reliable application of the principles and methods to the facts of the case," as required by the new Fed. R. Evid. 702(d). *See* ECF 513 at 5, 8.

## CONCLUSION

For the reasons stated above and in Mr. Eusebio's memorandum of law in support of his motions *in limine*, ECF 513, Mr. Eusebio respectfully requests that the government be (1) precluded from using inflammatory terminology at trial; (2) precluded from offering evidence of Mr. Eusebio's March 14, 2022 arrest and subsequent conviction; and (3) precluded from offering the expert testimony of Inspector Alfred Hernandez.

Dated: October 11, 2024　　　　　　　　　MORVILLO ABRAMOWITZ GRAND
　　　　New York, NY　　　　　　　　　　　　IASON & ANELLO P.C.

　　　　　　　　　　　　　　　　　　　　　　*/s/ Telemachus P. Kasulis*
　　　　　　　　　　　　　　　　　　　　　　Telemachus P. Kasulis
　　　　　　　　　　　　　　　　　　　　　　Peter Menz
　　　　　　　　　　　　　　　　　　　　　　565 Fifth Avenue
　　　　　　　　　　　　　　　　　　　　　　New York, NY 10017
　　　　　　　　　　　　　　　　　　　　　　Tel: (212) 856-9600
　　　　　　　　　　　　　　　　　　　　　　Fax: (212) 856-9494
　　　　　　　　　　　　　　　　　　　　　　tkasulis@maglaw.com
　　　　　　　　　　　　　　　　　　　　　　pmenz@maglaw.com
　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Alvin Eusebio*